[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2003
THOMAS K. KAHN
CLERK

No. 02-13155

D. C. Docket No. 01-01042-CV-MHS-1

ADMIRAL INSURANCE COMPANY,

Plaintiff-Counter-
Defendant-Appellee,

versus

CRESENT HILLS APARTMENTS,

Defendant-Counter-
Claimant-Cross-
Defendant-Cross-
Claimant-Appellant,

BAUER AGENCY, INC.,

Defendant-Counter-
Claimant-Cross-
Claimant-Cross-
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

(April 24, 2003)

Before ANDERSON and WILSON, Circuit Judges, and OWENS*, District Judge.

PER CURIAM:

## I.    Background

This is an appeal from the district court's grant of summary judgment in favor of Admiral Insurance Company and The Bauer Agency on Cresent Hills Apartments' $243,000 claim pursuant to a commercial insurance policy. Admiral denied the claim based on its allegation that the policy had been cancelled. The district court entered summary judgment for Admiral and Bauer finding Admiral had properly cancelled the policy.

The undisputed material facts show the following. On April 29, 2000, Admiral issued a commercial property insurance policy covering the Cresent Hills Apartments, a 252-unit apartment complex located on Cleveland Avenue in southwest Atlanta. The policy was purchased through the Bauer agency and Admiral's broker, Phoenix Special Risk, Inc. In early October 2000, Admiral decided to cancel the policy after a report in the newspaper about the apartments being in "deplorable" condition. Bonnie Smith, an underwriting assistant for Admiral, testified in her deposition that on October 5, 2000, she prepared a cancellation notice for Cresent to be sent by

_____

*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of Georgia, sitting by designation.

2

certified mail. The notice, which was not dated, indicated the policy would be cancelled effective November 8, 2000 for "underwriting reasons." Smith explained that she taped the envelope containing the notice to the outside of the mailbox in the lobby of Admiral's office building. On the outside of the envelope she placed a note asking the Post Office to date and sign or postmark the certified mail receipt showing the date it was picked up for delivery. Smith stated the Post Office did not do as requested; the receipt was returned to Admiral on October 6, 2002, undated and without a postmark.

The envelope containing the notice was delivered to Cresent on October 11, 2000. Margaret Liao, a Cresent employee, signed the certified mail return receipt and placed the unopened envelope on the desk of Jerome Yeh, the president and sole shareholder of the corporation that owns Cresent.

On December 27, 2000, five Cresent apartment units were destroyed by fire resulting in property damage totaling $243,121.56. The next day, Bauer submitted a claim for Cresent to Phoenix. On December 29, 2000, Phoenix notified Bauer that Admiral had cancelled the policy on November 8 and had denied the claim. Bauer contacted Yeh who then looked for and for the first time found the unopened cancellation notice on his desk.

Admiral filed a declaratory judgment action seeking a declaration that it had

effectively cancelled the policy and was not obligated to pay Cresent's claim. Cresent contends the notice failed to comply with O.C.G.A. § 33-24-44(b) because there is no evidence other than Bonnie Smith's deposition testimony that the notice was mailed within 30 days of the purported cancellation. Cresent also contends Admiral's failure to notify the lienholder voided the cancellation. Finally, Cresent contends Bauer had constructive notice of the purported cancellation because of an unearned premium that was directly deposited into Bauer's account. Cresent contends it was a breach of Bauer's fiduciary duty when Bauer failed to notify Cresent of the cancellation. Cresent argued that Bauer also had a duty to obtain replacement insurance in the event Admiral's cancellation was effective. Bauer filed a counterclaim against Admiral and a cross-claim against Cresent seeking a declaration that it did not receive notice of the purported cancellation before December 2000 and that it had no duty to obtain replacement insurance for Cresent. After a voluntary dismissal of certain claims by and against Bauer, the issues before the district court were Admiral's and Cresent's claims against each other and Cresent's cross-claim against Bauer. All parties moved for summary judgment. The district court granted summary judgment for Bauer and Admiral.

## II. LEGAL ANALYSIS

### Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standards used by the district court." Parks v. City of Warner Robins, Ga., 43 F.3d 609, 612-13 (11th Cir. 1995)(citation omitted). "Additionally, we note that we may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied." Id. The parties do not dispute that Georgia law applies in this case. See Broyles v. Bayless, 878 F.2d 1400, 1402 (11th Cir. 1989)(citation omitted).

*Agency Question*

The district court found that Bauer had no duty to notify Cresent of Admiral's attempted cancellation and that Bauer had no duty to procure a replacement policy. The case relied upon by Cresent for its claim that Bauer had a duty to obtain replacement insurance is distinguishable from the case at bar. See England v. Georgia-Florida Co., 198 Ga. App. 704, 402 S.E.2d 783 (1991). In England, the Georgia Court of Appeals found an insurance agent was liable for losses sustained by the insured when the agent was hired specifically to procure a replacement insurance policy with the same coverage provided under the old policy. The replacement policy did not cover everything the old policy covered and the court found the agent liable for the difference. The district court correctly found that England does not establish a duty on Bauer's part to obtain replacement insurance for Cresent since Bauer was

5

only hired to procure the original policy.

Cresent as Admiral contends had a duty to read the cancellation notice that was in its possession for more than two months prior to the fire and failed to do so. See Brooks Brown Ins. Agency, Inc. v. Harden, 236 Ga. App. 781, 513 S.E.2d 755 (1999). There an insured's policy was cancelled for nonpayment of premiums but she claimed she never received the cancellation notices. Harden, the insured, claimed her agent was liable for her losses because the agent negligently submitted to the premium finance company an incorrect address for Harden. The agent was found not liable because the cancellation was not proximately caused by any negligence on the agent's part. Harden received a copy of the policy months before the fire and the certificate of insurance included a request that the insured read the certificate and return it to the company if it was incorrect in any way. Harden failed to read the certificate and return a corrected copy. It was "Harden's duty to read the policy and to notify the insurer if it was incorrect." Id. at 784, 757. "Harden's own failure to read her policy and correct her address was the proximate cause of her failure to receive" the cancellation notices. Id. Brooks Brown established that an insured has a duty to take certain steps for its own protection such as reading their policies, certificates of insurance or any cancellation notices in their possession.

There are no facts in the record establishing any express or implied agreement

between Bauer and Cresent for Bauer to acquire replacement coverage upon cancellation of any policy. Bauer thus had no continuing duty to acquire additional insurance for Cresent upon the purported cancellation of the original policy and satisfied its only duty when it procured the original policy. The district court did not err in finding Bauer had no duty to procure replacement insurance and that it had no duty to notify Cresent of the purported cancellation.

### *Notification to Lienholder*

O.C.G.A. § 33-24-44(b) provides that the insurer must notify "the insured and . . . any lienholder, where applicable" of cancellation of the insured's policy. See O.C.G.A. § 33-24-44(b). Cresent also contends that Admiral's notice was ineffective because First Savings Bank, as lienholder, did not receive notice of the cancellation. The district court did not dispositively address this issue. Rather, the district court stated in a footnote that the matter was not properly before it because the lienholder is not a party to this case. A review of applicable Georgia case law shows it is unclear whether the failure to provide the lienholder with proper notice of the cancellation has any bearing on the effect of the notice in relation to Cresent. In S.C. Ins. Co. V. Glennville Bank, 111 Ga. App. 174, 177, 141 S.E.2d 168, 171 (1965), the insured received notice of the cancellation but the lienholder did not. The court held that "the notice of cancellation sent [to] the insured was ineffective as to the . . .

7

[lienholder] and the insurance company remained liable to [the lienholder]". However, in <u>Metropolitan Property & Cas. Ins. Co. v. Zeller</u>, 246 Ga. App. 637, 541 S.E.2d 433 (2000), failure to notify the lienholder resulted in summary judgment for the insured. Metropolitan cancelled the policy for nonpayment of premiums on a vehicle leased by Zeller from GMAC. Six weeks later, the car was involved in a collision that resulted in a total loss. GMAC sued Zeller to recover the balance due under the lease. Zeller filed a third-party complaint against Metropolitan claiming that the loss was covered under the insurance policy. As to the issue of lienholder notification, Metropolitan claimed GMAC was not entitled to notice because it was a lessor-owner of the vehicle and not a lienholder. The trial court found that GMAC was in fact a lienholder entitled to statutory notice and granted Zeller's motion for summary judgment against Metropolitan.

Because no Georgia case law resolves the issue of whether Admiral's failure to notify the lienholder in this case inures to the benefit of Cresent, the insured, we respectfully certify the following question of law to the Supreme Court of Georgia:

> Did Admiral's failure to notify the lienholder of the attempted cancellation of Cresent's policy affect in any way Cresent's right to make a claim under the policy?

> ***Statutory Question on Cancellation of the Policy***

> Under Georgia law, insurance policies must be cancelled pursuant to the

8

methods prescribed in O.C.G.A. § 33-24-44 that provides

> Written notice stating the time when the cancellation will be effective, which shall not be less than 30 days from the date of mailing or delivery in person of such notice of cancellation or such other specific longer period as may be provided in the contract or by statute, shall be delivered in person or by depositing the notice in the United States mails to be dispatched by at least first-class mail to the last address of record of the insured and of any lienholder, where applicable, and receiving the receipt provided by the United States Postal Service or such other evidence of mailing as prescribed or accepted by the United States Postal Service.

O.C.G.A. §33-24-44(b). This court has examined the potentially applicable Georgia case law and found no case that resolves the issue of whether Admiral complied with the statute when it attempted to cancel Cresent's policy. See Travelers Indemnity Co. v. Guess, 243 Ga. 559, 255 S.E.2d 55 (1979); Trammell Crowe Constr. Co., Inc., 198 Ga. App. 754, 403 S.E.2d 72 (1991); Favati v. National Prop. Owners Ins. Co., 153 Ga. App. 723, 266 S.E.2d 359 (1980); Moore v. Scottsdale Ins. Co., 264 Ga. 808, 450 S.E.2d 198 (1994); State Farm Mut. Auto. Ins. Co. v. Drury, 222 Ga. App. 196, 474 S.E.2d 64 (1996); Continental Ins. Co. v. State Farm Mut. Ins. Co., 212 Ga. App. 839, 443 S.E.2d 509 (1994); State Farm Mut. Auto. Ins. Co. v. Harris, 177 Ga. App. 826, 341 S.E.2d 472 (1986); Massachusetts Bay Ins. Co. v. Photographic Assistance, 732 F. Supp. 1572 (N.D. Ga. 1990); Edmondson v. Air Service Co., 123 Ga. App. 263, 180 S.E.2d 589 (1971); In re East Coast Brokers and Packers, Inc., 961 F.2d 1543

(11th Cir. 1992); <u>Pogue v. Oglethorpe Power Corp.</u>, 82 F.3d 1012 (11th Cir. 1996).

Because no Georgia case law resolves the issue of whether Admiral's attempted cancellation complied with the statute, we respectfully certify the following question of law to the Supreme Court of Georgia:

> Did Admiral comply with the requirements of O.C.G.A. § 33-24-44(b) by affixing an envelope containing a notice of policy cancellation to the outside of a United States postal mailbox with a request to the United States Postal Service to receipt for the same and mail it via certified mail to Cresent?

Our statements of the questions certified above are not meant to limit the scope of inquiry by the Supreme Court of Georgia. "On the contrary: The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis. . . . This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given. . . ." <u>Id.</u> (citing <u>Martinez v. Rodriquez</u>, 394 F.2d 156, 159 n.6 (5th Cir.1968)).

Along with these certifications, the entire record is transmitted to the Supreme Court of Georgia.

QUESTIONS CERTIFIED pursuant to O.C.G.A. § 15-2-9.

## III. CONCLUSION

We AFFIRM the district court's grant of summary judgment for Bauer on

Cresent's cross-claims.   With respect to the issue of whether the policy was effectively cancelled, we CERTIFY the state law question.  With respect to the issue of the insurer's failure to notify the lienholder, we CERTIFY the state law question. We WITHHOLD any decision on the district court's grant of summary judgment on any other claims until we receive the answer to the certification.