[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-12121
Non-Argument Calendar

_____

U.S. Tax Court No. 3826-04L

PAUL F. WRUBLESKI,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
United States Tax Court

_____

(October 20, 2005)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Taxpayer Paul Wrubleski, proceeding pro se and pursuant to 26 U.S.C. § 6330(d)(1), filed a petition in the tax court for review of the Internal Revenue Service Appeals Office's ("the Appeals Office's") determination sustaining a proposed levy on Wrubleski's property, to collect unpaid tax liabilities for the tax years 1998, 1999, and 2000. Again proceeding pro se on appeal, he is challenging the tax court's grant of the Commissioner of Internal Revenue's ("the Commissioner's") motion to dismiss his petition for review for failure to prosecute. For the reasons set forth more fully below, we affirm.

Prior to Wrubleski filing the instant petition for review, he reported "zero" income tax due on tax returns he filed for 1998, 1999, and 2000. Because Wrubleski's tax liabilities, instead, were $28,354 for tax year 1998, $10,618 for tax year 1999, and $10,211 for tax year 2000, the Commissioner sent to Wrubleski by certified mail notices of deficiencies for these years, pursuant to 26 U.S.C. § 6212(a). After Wrubleski failed to petition the tax court for review of these asserted deficiencies within the 90-day period permitted under 26 U.S.C. § 6213(a), the Commissioner assessed these deficiency amounts and mailed to Wrubleski a notice and demand for payment. Moreover, after Wrubleski failed to pay these assessed amounts, the Commissioner mailed to him a final notice,

2

pursuant to 26 U.S.C. § 6330(d), informing him of (1) the Commissioner's intent to levy Wrubleski's property, and (2) Wrubleski's right to a CDP hearing.[1]

Wrubleski subsequently requested a CDP hearing, arguing that he was not liable for any income tax because (1) his wages were not taxable as income, (2) no tax had been assessed against him, and (3) the Commissioner lacked authority either to assess income taxes or to levy his property. The Appeals Office sent Wrubleski a letter advising him that, because his arguments were frivolous, he was not entitled to a face-to-face conference. The Appeals Office also attached to this letter transcripts of Wrubleski's accounts for tax years 1998 through 2000. After electing to have his CDP hearing conducted through correspondence, Wrubleski again raised multiple constitutional challenges to the federal income tax and to the Commissioner's general authority.

In February 2004, the Appeals Office issued a notice of determination, sustaining the proposed levy. The Appeals Office explained that Wrubleski was barred, pursuant to 26 U.S.C. § 6330(c)(2)(B), from challenging either the

---

[1] Section 6321 of Title 26 of the United States Code provides that, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." See 26 U.S.C. § 6321. If a person neglects or refuses to pay such tax within ten days after notice and demand for payment, the Commissioner may collect such tax by levy upon property belonging to the person. See 26 U.S.C. § 6331(a). The Commissioner, however, may not collect taxes by way of a levy on a person's property until the person is given notice of, and an opportunity for, an administrative review of the matter, such as in the form of a CDP hearing, and, if dissatisfied, provided judicial review of the administrative determination. See 26 U.S.C. § 6330(a)-(d); see also Roberts v. C.I.R., 329 F.3d 1224, 1227 (11th. Cir. 2003).

existence, or the amount, of his tax liabilities for tax years 1998 through 2000, because he admitted that he had received notices of the deficiencies, and he had failed to timely petition the tax court for their redetermination. The Appeals Office also explained that an officer had verified that the deficiency assessments were valid and unpaid, and that applicable laws and administrative procedures had been followed. In addition, it discussed that Wrubleski neither had proposed a "valid collection alternative," nor "an acceptable, less intrusive method of payment." The Appeals Office concluded that the proposed levy balanced "the need for the efficient collection of taxes and [Wrubleski's] legitimate concern that any collection action be no more intrusive than necessary."

On March 3, 2004, Wrubleski filed the instant petition, arguing that the Appeals Office's determination was "lawless and erroneous" because the Commissioner failed to provide him with, or to attach to the determination, (1) a "Summary Record of Assessment" that supported the levy, as required by Treas. Reg. § 301.6203-1; (2) a "notice and demand for payment," as required by 26 U.S.C. §§ 6303, 6321, and 6331; (3) a "valid notice of deficiency in connection with any of the years at issue"; and (4) verification from the Secretary of the Treasury "that the requirements of any applicable law or administrative procedure ha[d] been met," pursuant to 26 U.S.C. § 6330(c)(1). Wrubleski also contended that he was challenging the existence of the underlying tax liability, and that this

4

challenge was authorized because he did not receive any statutory notice of the deficiencies for the relevant years. As relief, Wrubleski sought (1) a declaration that the Appeals Office's determination was invalid; (2) an order directing the Appeals Office to conduct a proper CDP hearing and to have available at this hearing all "relevant documents"; and (3) an order directing the Commissioner to reimburse Wrubleski for his costs.

In June 2004, the Commissioner filed an answer to Wrubleski's petition, arguing that the Appeals Office's determination should be sustained. In July 2004, the tax court issued (1) a standing pretrial order, and (2) a notice setting Wrubleski's trial date as December 6, 2004. In its pretrial order, the tax court instructed the parties that "all parties shall be prepared for trial," and that "[t]he [c]ourt may impose appropriate sanctions, including dismissal, for any unexcused failure to comply with this Order." Moreover, in its notice of the trial date, the tax court warned the parties:

> [B]oth parties are expected to be present at that time and be prepared to try the case. YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU.

The Commissioner subsequently moved for summary judgment, arguing that no genuine issue of material fact existed. Wrubleski responded that the officer who had conducted his CDP hearing had not satisfied the verification requirement

5

in 26 U.S.C. § 6330(c)(1), because (1) "[n]ot one of the documents provided . . . came from the office of the Secretary," and (2) the Commissioner had not provided him with "the unbroken chain of delegation and re-delegation orders from the Secretary to the Revenue Agent level and Appeals Officer level of the IRS."[2] Wrubleski also filed a motion to compel the Commissioner to produce multiple documents, including (1) proof that the notices of deficiencies and other statutory notices and demands had been mailed to him; (2) proof that he had received these documents; (3) a document stating that the Secretary of the Treasury had authorized an action for the collection of taxes and penalties; and (4) a signed document by the Secretary that all applicable laws and regulations had been followed. The Commissioner replied that the Secretary was not required to verify personally that all such requirements were met.

On November 1, 2004, Wrubleski filed a document labeled "praecipe for judicial notice of pending settlement and petition for stay," in which he referred to a "settlement pending between the parties" and requested that the tax court stay the proceeding during the "pendency of the settlement."[3] Wrubleski included in

---

[2] As part of this verification challenge, Wrubleski also argued that (1) "code 494" was required to appear on transcripts to prove that notices of deficiencies were issued to him; (2) the absence of this code "shed[] complete doubt on the validity of the balances of the entries on these transcripts"; and (3) he was "unable to verify or translate the meaning and significance of the IRS codes" that appeared on his transcripts.

[3] As the Commissioner notes in its brief on appeal, Wrubleski has included in his record excerpts an "Affidavit of Agreement," which purportedly is signed by attorneys representing the

6

this document that he intended "to pay all debts validated, i.e., verified and substantiated, as being owed" by him. Construing this motion as a motion to continue the trial date, the tax court denied it. On November 22, 2004, the tax court also denied the Commissioner's motion for summary judgment and directed the Commissioner to provide Wrubleski with the documents he requested in his motion to compel.

On December 6, 2004, the tax court called the case for trial, both in the morning and the afternoon. Wrubleski failed to appear at either time. The Commissioner then moved to dismiss the petition for failure to prosecute, explaining that (1) no issues existed on which the Commissioner bore the burden of proof, and (2) Wrubleski had failed to appear after being informed of the trial date. The tax court summarily granted the Commissioner's motion and ordered the levy of Wrubleski's property.

Wrubleski argues on appeal that the tax court either abused its discretion, or clearly erred, by refusing to accept for filing "all evidence Wrubleski attempted to

---

Commissioner. This document, however, is not part of the appellate record. Moreover, Wrubleski has not sought leave from this Court to supplement the record. Thus, we will not review it. See Jones v. White, 992 F.2d 1548, 1566-67 (11th Cir. 1993) (explaining that, although "[t]his [C]ourt's inherent equitable powers allow it to supplement the record with information not reviewed by the district [court]," it "[has] not allowed supplementation when a party has failed to request leave of this [C]ourt to supplement a record on appeal or has appended material to an appellate brief without filing a motion requesting supplementation"). Regardless, as discussed below, in the absence of proof of formal acceptance, this document does not establish "a binding settlement on a tax liability."

file after November 1, 2004." Wrubleski asserts in support that (1) the court's refusal to accept Wrubleski's evidence was "tantamount to the denial of due process"; and (2) this refusal "undermine[d] confidence in the outcome of the proceedings in this Case to an unacceptable degree." Wrubleski asserts that the Appeals Office refused to provide, or even identify, each and every document requested by him. Wrubleski also argues that the court erred in dismissing the petition in light of the fact that the parties had a settlement agreement, which the Commissioner, at least implicitly, had ratified by (1) not avoiding it, (2) using Wrubleski's "trademark," and (3) refusing tender of payment.[4]

As a preliminary matter, to the extent Wrubleski is arguing in reply that the tax court erred in dismissing his petition because the Appeals Office improperly denied his constitutional challenges to his levy, he failed to raise this argument in his initial brief. We, therefore, deem this argument abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (issues not argued in initial brief are deemed abandoned). Regardless, we repeatedly have rejected these "tax protest" type arguments. See Biermann v. C.I.R., 769 F.2d 707,

---

[4] Wrubleski also argues for the first time in reply that the Appeals Office erred in finding frivolous his constitutional challenge to the income tax. Wrubleski contends in support that, because his labor is his property, if he exchanges his labor for his employer's monetary compensation, there is no gain or profit on his part.

708 (11th Cir. 1985). Thus, even if Wrubleski had properly raised this argument, it is without merit.

Pursuant to 26 U.S.C. § 7453, the Tax Court has promulgated rules of practice and procedure governing the conduct of proceedings in that court. See 26 U.S.C. § 7453. Under Rule 123(b) of the Tax Court Rules of Practice and Procedure:

> For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal.

26 U.S.C. foll. § 7453, Tax Court Rule 123(b). Moreover, "a decision rendered . . . in consequence of a dismissal, other than a dismissal for lack of jurisdiction, shall operate as an adjudication on the merits. Id., Tax Court Rule 123(d). We review a tax court's dismissal for failure to properly prosecute, pursuant to Rule 123(b), for abuse of discretion. Crandall v. C.I.R., 650 F.2d 659, 660 (5th Cir. Unit B July 13, 1981).

In explaining this abuse-of-discretion standard, the former Fifth Circuit discussed in Crandall that standards governing Fed.R.Civ.P. 41—the rule applicable when a party fails to prosecute his case, comply with a court order, or follow the Federal Rules of Civil Procedure in a district court—similarly should

9

govern dismissals by the tax court. Id. "Dismissal under Rule 41(b) is appropriate where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice." Gratton v. Great American Communications, 178 F.3d 1373, 1374 (11th Cir. 1999).

In Crandall, the former Fifth Circuit reviewed a tax court's dismissal of a taxpayer's appeal of a tax deficiency, which dismissal was based on the taxpayer's failure to file a timely petition and filing fee. See Crandall, 650 F.3d at 659. The Crandall Court noted that (1) "no history of delay or contumacious conduct by the appellant" existed; (2) the tax court had dismissed the case after only three months of inactivity by the taxpayer; (3) the taxpayer had not repeatedly failed to comply with the tax court's orders; (4) the tax court had not repeatedly warned the taxpayer that he was risking dismissal; and (5) on appeal, the taxpayer had offered a reason for his failure to comply the tax court's order. See id. at 660. The Crandall Court determined that, under these circumstances, the tax court's dismissal of the appellant's case was premature. See id. The court, therefore, remanded the case to allow the taxpayer to present evidence of his excuse, and for the tax court to make findings as to whether dismissal was justified. See id.

On the other hand, in Freedson v. C.I.R., 565 F.2d 954 (5th Cir. 1978), the former Fifth Circuit affirmed a tax court's dismissal of a petition relating to a protest of assessments of deficiencies and additional taxes, when the dismissal was

10

based on the taxpayers' unpreparedness to present their case at their trial date. See id. at 954. The Freedson Court explained that (1) the case had been pending for a sufficient length of time to enable the taxpayers to prepare their case, (2) the taxpayers already had obtained three continuances of their trial date, and (3) the court had warned the taxpayers two and one-half years before their case was dismissed that the court would look unfavorably upon further requests for continuances. See id. at 955. The Freedson Court also noted that the taxpayers had been uncooperative in providing the Commissioner with information necessary for the trial, and that the tax court had considered possible lesser sanctions and found them inappropriate. See id. Although the Freedson Court acknowledged that dismissal of an action is "a severe sanction," it concluded that dismissal was not excessive under the circumstances. See id.

In the instant case, Wrubleski filed his petition in the tax court nine months before his scheduled trial date. The tax court warned Wrubleski in both its pretrial order and its notice of trial that his unexcused failure to appear and be ready for trial on his schedule trial date might result in appropriate sanctions, including dismissal. Moreover, Wrubleski neither explained in the tax court, nor on appeal, why he did not appear at his scheduled trial date, or why he could not have presented evidence at that time. Although Wrubleski filed a pretrial document labeled "praecipe for judicial notice of pending settlement and petition for stay," in

11

which he requested the court to stay the proceedings pending a settlement between the parties, as discussed below, he presented no evidence showing that a "binding settlement agreement" existed. Thus, similar to Freedson, we conclude that the district court did not abuse its discretion in dismissing Wrubleski's petition. See Freedson, 565 F.2d at 955; see also Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002) (holding that, although pro se litigants are entitled to liberal construction of their pleadings, pro se litigants must follow procedural rules).

Even if we were to conclude that the tax court abused its discretion in dismissing Wrubleski's petition, Wrubleski has failed to show prejudice because his arguments in his petition either were without merit, or were ones that the tax court could not consider. See Admiral Ins. Co. v. Cresent Hills Apartments, 328 F.3d 1310, 1312 (11th Cir. 2003) (we "may affirm the district court's decision on any adequate ground, even if it is other than the one on which the court actually relied" (quotation omitted)). During a CDP hearing, a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including spousal defenses; challenges to the appropriateness of the collection action; and offers of collection alternatives. 26 U.S.C. § 6330(c)(2)(A). A taxpayer, however, may not challenge the amount or existence of the underlying tax liability unless he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B). On

12

appeal to the tax court, a taxpayer also is limited to issues he raised during his CDP hearing. Treas. Reg. § 301.6330-1(f)(2).[5]

As discussed above, Wrubleski received statutory notice of his deficiencies for tax years 1998 through 2000. Moreover, Wrubleski has failed to explain why he could not have contested these deficiencies during the 90-day period that he had to seek review. See 26 U.S.C. § 6213(a) (setting a 90-day time limit on appeals of assessments of tax deficiencies to the tax court for a redetermination). Thus, Wrubleski could not challenge these deficiency amounts during his CDP hearing. See 26 U.S.C. § 6330(c)(2)(B).

To the extent Wrubleski also argued in the tax court that the Appeals Office refused to provide, or to identify, evidence that Wrubleski requested, the United States Code provides that "[t]he appeals officer shall at the [CDP] hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met," 26 U.S.C. § 6330(c)(1). Moreover, "[t]he assessment [of taxes] shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by

---

[5] Examining similar treasury regulations in effect in 1945, the Supreme Court noted in Boehm v. C.I.R., 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78 (1945), that "[s]uch regulations, being 'long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.'" See id., 326 U.S. at 291-92, 66 S.Ct. at 123 (quotation omitted).

the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment." 26 U.S.C. § 6203.[6]

We, however, have determined that § 6330(c)(1) "does not require the Appeals officer to give the taxpayer a copy of the verification that the requirements of any applicable law or administrative procedure have been met." See Roberts, 329 F.3d at 1228. We also concluded in Roberts that a computer transcript detailing the record of each assessment was sufficient verification, pursuant to § 6203, at least where there was no evidence to the contrary. See id. at 1225-28. Because the Appeals Office was not required to provide Wrubleski with verification that proper procedures were followed in assessing his deficiencies for tax years 1998 through 2000, and because the computer-generated records that the Commissioner attached to its motion for summary judgment detailed the record of each assessment and, thus, was sufficient under § 6203, at least where Wrubleski failed to present contradictory evidence, these arguments were without merit.

To the extent Wrubleski alternatively is claiming that the tax court erred in dismissing his petition because of a settlement agreement that he asserted existed

---

[6] The regulations further provide that "[t]he assessment shall be made by an assessment officer signing the summary record of assessment. The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment . . .. If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." See Treas. Reg. § 301.6203-1.

14

between the parties, "[t]he Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution and defense." 26 U.S.C. § 7122(a). The only three possible grounds for a compromise of federal tax liabilities are: (1) doubt as to liability; (2) doubt as to collectibility; and (3) the promotion of effective tax administration. Treas. Reg. § 301.7122-1(b). "An offer to compromise has not been accepted until the IRS issues a written notification of acceptance to the taxpayer or the taxpayer's representative." Treas. Reg. § 301.7122-1(e)(1); see also Klein v. C.I.R., 899 F.2d 1149, 1152-53 (11th Cir. 1990) (holding that a binding settlement on a tax liability must follow the requirements of the tax code which include the execution of a closing agreement). The requirements in §§ 7121 and 7122, and the accompanying regulations, are exclusively and strictly construed. Id. at 1153 (citing Botany Worsted Mills v. United States, 278 U.S. 282, 288-89, 49 S.Ct. 129, 131-32, 73 L.Ed.2d 379 (1929)); see also Creel v. C.I.R., 419 F.3d 1135, 1141 (11th Cir. 2005) (holding that the U.S. Attorney's actions would not bind the government, even if he intended to compromise a taxpayer's civil-tax liability, if the U.S. Attorney did not have authority to reach a compromise).

Even if we were to consider the "Affidavit of Agreement" that Wrubleski attempted to file in the tax court prior to his trial date, this document neither reflects that liability was at issue, nor that Wrubleski intended to pay the assessed

15

amounts. None of the possible grounds for a compromise, therefore, existed in this case. See Treas. Reg. § 301.7122-1(b). More importantly, Wrubleski has not shown that the IRS issued "a written notification of acceptance to the taxpayer or the taxpayer's representative," as required by Treas. Reg. § 301.7122-1(e)(1). Thus, even assuming for purposes of argument that the Commissioner refused tender of payment, declined to provide proof or evidence of a claim, and used Wrubleski's "trademark"—conduct that Wrubleski claims demonstrates that the Commissioner implicitly ratified the alleged settlement agreement—this conduct was not sufficient under the tax code to create a "binding settlement." See Klein, 899 F.2d at 1152.

Accordingly, we conclude that Wrubleski has failed to show that the tax court abused it discretion in granting the Commissioner's motion to dismiss his petition for review. We, therefore, affirm.

**AFFIRMED.**